RECORD NO. 14-1346

In The

# United States Court Of Appeals

## For The Fourth Circuit

In re: ROBERT A. WOLF,

*Debtor,*

--------------------------------

THOMAS P. GORMAN,

*Plaintiff - Appellant,*

v.

ROBERT A. WOLF,

*Defendant - Appellee.*

ON APPEAL FROM UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT ALEXANDRIA

_____

## BRIEF OF APPELLEE

_____

Robert R. Weed, VSB # 24646
Kaitlin A. Vaillancourt, VSB # 83922
  *(On the Brief)*
LAW OFFICES OF ROBERT ROSS WEED
45575 Shepard Drive, Suite # 201
Sterling, VA  20164
(703) 335-7793 – Telephone
(703) 649-0822 – Facsimile

*Counsel for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____      Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____

(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                              YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                          YES      NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?       YES     NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)     YES     NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?                     YES     NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____

Counsel for: _____

# CERTIFICATE OF SERVICE

**************************

I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____               _____
       (signature)                                        (date)

# TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES ................................................................. iii

JURISDICTION ............................................................................ 1

ISSUES PRESENTED .................................................................... 2

STATEMENT OF THE CASE ........................................................... 2

SUMMARY OF THE ARGUMENT .................................................... 5

ARGUMENT ................................................................................ 7

    STANDARD OF REVIEW ......................................................... 7

I.    The Bankruptcy Court Properly Evaluated The Propriety of Debtor's Vehicle Purchase And Did Not Err In Finding That The Corresponding Vehicle Loan Incurred Prior to Filing Bankruptcy Is Prudent Planning And Not Abusive ............................. 7

II.    The Bankruptcy Court Properly Found That Debtor's Plan Was Proposed In Good Faith ....................................................... 14

    A.    The Bankruptcy Court Meaningfully Evaluated The Totality of Debtor's Chapter 13 Plan And Did Not Accept Debtor's Candor In Lieu Of Actual Good Faith .......... 14

    B.    The Bankruptcy Court Properly Scrutinized Debtor's Pre-petition Purchase of A Vehicle .......................................... 19

III.    The Bankruptcy Court Did Not Improperly Take Judicial Notice That Debtor Would Only Be Able To Obtain An "Exorbitant" Interest Rate On A Vehicle Loan During His Bankruptcy ....................................................................... 21

i

CONCLUSION ...................................................................................................24

STATEMENT REGARDING ORAL ARGUMENT ............................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*In re Arnold*,
  869 F.2d 240 (4th Cir. 1989) ..........................................................22

*In re Baird*,
  234 B.R. 546 (Bankr. M.D. Fla. 1999)...........................................16

*In re Banks*,
  248 B.R. 799 (8th Cir. BAP 2000), *aff'd*, 267 F.3d 875................16

*In re Chapman*,
  Case No. 09-13113-RGM (EDVA) ..................................................22

*In re Georgeff*,
  218 13 B.R. 403 (Bankr. S.D. Ohio 1998) .....................................17

*IRS v. White* (*In re White*),
  487 F.3d 199 (4th Cir. 2007) .............................................................7

*In re Kirkland*,
  600 F.3d 310 (4th Cir. 2010) .............................................................7

*In re Larson*,
  245 B.R. 609 (Bankr. D. Minn. 2000)............................................16

*In re Love*,
  957 F.2d 1350 (7th Cir. 1992) ........................................................17

*In re McGovern*,
  297 B.R. 650 (S.D. Fla. 2003) ...........................................15, 16, 17

*Milavetz v. United States*,
  130 S. Ct. 1324 (2010)............................................................*passim*

*In re Murphy*,
  474 F.3d 143 (4th Cir. 2007) ..........................................................22

*In re Norwood*,
  178 B.R. 683 (Bankr. E.D. Pa. 1995) ...........................................................17

*In re Randle*,
  358 B.R. 360 (Bankr. N.D. Ill. 2006) ...........................................................14

*In re Ransom v. FIA Card Servs., N.A.*,
  131 S. Ct. 716 (2011)...........................................................................10, 14

*In re Solomon*,
  67 F.3d 1128 (4th Cir. 1995) ......................................................................17

*United Student Aid Funds, Inc. v. Espinosa*,
  559 U.S. 260 (2010)...................................................................................2

*In re Wick*,
  421 B.R. 206 (Bankr. D. Md. 2010) ........................................................18, 19

*In re Williams*,
  475 B.R. 489 (Bankr. E.D. Va. 2012) ......................................................19, 20

**STATUTES:**

11 U.S.C. § 707(b)(2)(A)(ii)(I) ...................................................................10

11 U.S.C. § 1325(a)(6) ..............................................................................13

11 U.S.C. § 1325(b)(2)(A)(i) ......................................................................10

11 U.S.C. § 1325(b)(2)(A)(ii) .....................................................................10

28 U.S.C. § 157(b)(1)..................................................................................1

28 U.S.C. § 157(b)(2)(L) .............................................................................1

28 U.S.C. § 158.........................................................................................2

28 U.S.C. § 158(a)(1)..................................................................................1

28 U.S.C. § 158(d)(1)..................................................................................1

28 U.S.C. § 1291 ...................................................................................1

28 U.S.C. § 1334(a) ............................................................................1

**RULE:**

Fed. R. App. P. 10(a) .........................................................................22

**OTHER:**

Report of the Committee on the Judiciary,
House of Representatives, to Accompany S. 256,
    H.R. Rep. No. 109-31, 109th Cong., 1st Sess. (2005)...................................14

U.S. Code Cong. & Admin. News 2005 ....................................................14

VA. RULES OF PROF'L CONDUCT R. 1 (2013) .........................................12

## JURISDICTION

This is an appeal from a final Unpublished Order of the district court (J.A. 117) affirming the United States Bankruptcy Court for the Eastern District of Virginia's Order Overruling the Chapter 13 Trustee's Objection to Debtor's Plan ("Order Overruling Trustee's Objection") (J.A. 102) and Order Confirming Plan (J.A. 110). The bankruptcy court's Order Overruling Trustee's Objection was entered on October 3, 2013 (J.A. 7, 109) and the Order Confirming Plan was entered on October 7, 2013 (J.A. 7, 111). The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(b)(1) to hear matters relating to confirmation of a Chapter 13 Plan, as confirmation of a Plan was a core proceeding under 28 U.S.C. § 157(b)(2)(L).

A Notice of Appeal to the district court was filed on October 10, 2013 (J.A. 7-8, 115-116). The district court subsequently had jurisdiction to hear the appeal pursuant to 28 U.S.C. § 158(a)(1). The district court affirmed the bankruptcy court's decision by an Unpublished Order entered on March 24, 2014 (J.A. 3, 117-118). A Notice of Appeal to this Court was filed on April 1, 2014 (J.A. 3, 119-120).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 158(d)(1) and 1291. This appeal is from the district court's final order or judgment affirming the bankruptcy court's Order Overruling Trustee's Objection and Order

1

Confirming Plan, which are final orders or judgments within the meaning of 28 U.S.C. § 158. *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 269 (2010).

## ISSUES PRESENTED

1.      Whether the bankruptcy court erred in finding that the Debtor's Chapter 13 Plan was proposed in good faith.

2.      Whether a debtor's purchase and finance of a new Ford Focus on the eve of a Chapter 13 bankruptcy is necessarily in bad faith.

3.      Whether the bankruptcy court improperly took judicial notice that the debtor would only be able to obtain an "exorbitant" interest rate on a vehicle loan during his bankruptcy.

## STATEMENT OF THE CASE

Appellee-Debtor ("Debtor") filed a Chapter 13 petition on July 9, 2013. (J.A. 5). In June 2013, Debtor traded in an unencumbered 2005 Ford Mustang for a 2013 Ford Focus. (J.A. 33). The 2013 Ford Focus has a monthly payment of $419.39 per month. (J.A. 27). The Debtor testified that he traded the 2005 Ford Mustang in for a vehicle that would receive better gas mileage, lower insurance cost, reduce maintenance or repair costs; and would last throughout the completion of Debtor's Chapter 13 Plan. (J.A. 80, 83, 85).

In May 2013, Debtor sold a 2009 Harley Davidson motorcycle that paid off the lien and resulted in only $308 in net proceeds. (J.A. 33, 87). In December 2012, seven months prior to filing bankruptcy, Debtor borrowed $9,000.00 from his 401(k) account for a down payment on a rental and related moving expenses. (J.A. 33, 86-87. Debtor testified that he moved to a house that saved him $300 a month on rent. (J.A. 86-87).

Debtor's Chapter 13 Plan proposes payments of $100.00 per month for 18 months, then $550.00 per month for 42 months (upon repayment of the 401(k) loan), for a total Plan funding of $24,900.00, and a 40% distribution to unsecured creditors. (J.A. 46-47).

Appellant-Trustee ("Trustee") filed an Objection to Confirmation to Debtor's proposed Plan on the grounds that the Plan was not proposed in good faith and that the proposed Plan payments do not represent all of Debtor's monthly disposable income. (J.A. 64-65). Trustee also argued that Debtor overstated his expenses on Schedule J. (J.A. 64-65).

On September 26, 2013, the bankruptcy court held a hearing on Trustee's Objection to Confirmation of Debtor's proposed Plan. (J.A. 65, 67-101). After consideration of arguments of counsel and testimony of the Debtor, the bankruptcy court overruled Trustee's Objection to Confirmation and confirmed Debtor's proposed Plan. (J.A. 102-109). The bankruptcy court balanced the totality of

3

circumstances, and addressed the applicable factors, finding that the percentage of proposed repayment to creditors is roughly 40%, the creditors will be paid over five years, the Debtor does not have any past bankruptcy filings, the Debtor has not been dishonest in his representation of the facts of the case, and the Debtor does not appear to have any non-dischargeable student loans, tax obligations, or domestic support obligations. (J.A. 104-105).

In further support of the bankruptcy court's finding that Debtor's Plan was proposed in good faith, the bankruptcy court held that Debtor "was not motivated by a desire to load up on debt in anticipation of his bankruptcy filing."

> First, the debt is not of the kind that the Supreme Court in *Milavetz* described as abusive, for example, unsecured credit card debt incurred on the eve of bankruptcy for which the Debtor would hope to receive a discharge. Rather, the debt for the Focus is secured debt, which the Debtor will need to pay if he expects to keep the vehicle. The Debtor testified that the Focus is more fuel efficient than the Mustang. He testified that his insurance bills will be lower, because the Ford is not considered to be a sports car. And, he testified that if he were to file for bankruptcy and needed to purchase a vehicle during the course of his case, the interest rate for a new car loan would be exorbitant.

> [J.A. 108].

The bankruptcy court overruled Trustee's objections and confirmed Debtor's Chapter 13 Plan holding that the purchase of the Ford Focus was prudent financial planning. (J.A. 108).

On October 10, 2013, the Trustee appealed the bankruptcy court's decision to the United States District Court for the Eastern District of Virginia. (J.A. 115). On March 24, 2014, the United States District Court for the Eastern District of Virginia affirmed the bankruptcy court's finding of good faith. (J.A. 117-118). The Trustee then appealed to this Court on April 1, 2014. (J.A. 119).

## SUMMARY OF THE ARGUMENT

The Debtor argues that the bankruptcy court properly evaluated the propriety of Debtor's vehicle purchase, correctly interpreting the Supreme Court opinion in *Milavetz v. United States*, 130 S. Ct. 1324 (2010). Debtor reasonably anticipated that a seven-year old vehicle would not make it another five years, in which the vehicle would then be twelve years old, without significant repairs affecting Debtor's expenses and his Chapter 13 Plan in the future. *Milavetz*, *supra*, 130 S. Ct. 1324, expressly authorizes this type of prudent financial planning.

The Trustee's contention that the bankruptcy court "failed to evaluate the totality of the circumstances" is not supported by the record. This Court directs the bankruptcy judge to consider as one factor, "the nature of the debtor's pre-petition conduct that gave rise the debts." The Trustee attempts to re-write the "good faith" standard created by the Fourth Circuit by ignoring that fact. The bankruptcy court had the opportunity to consider the arguments of counsel and testimony of the Debtor and correctly determined good faith based on all of the factors and the

5

totality of the circumstances. The Debtor's candor with the court was one of the factors supporting the Debtor's proper motivation and intent in filing his Chapter 13 plan, but was not accepted in lieu of actual good faith.

The Trustee misinterprets the bankruptcy court's statement regarding the Debtor's testimony as to credit worthiness as judicial notice. The bankruptcy court agreed with Debtor that Debtor's reasonable fear was a factor that motivated him. The record reflects Debtor's position that if he had in fact kept the unencumbered, seven-year old sports vehicle, the Debtor would likely need repairs in the future, to which the Trustee agreed, and/or would not likely be able to obtain reasonable financing, or even secure a newer used vehicle, which would also require repairs. These unknowns often lead to the collapse of a debtor's chapter 13 plan. Taking all of this into account, the bankruptcy court did not fail to scrutinize the effect of the vehicle purchase on Debtor's creditors.

Moreover, a debtor is required by law to propose a feasible plan, where he can make all of the payments and comply with all provisions of the Plan. The Debtor was acting prudently in arranging his affairs so that it is possible to hold his transportation expenses to the $277 operating costs allowed under the means test.

## ARGUMENT

## STANDARD OF REVIEW

Upon appellate review of a decision issued by the district court in its capacity as a bankruptcy appellate court, legal conclusions of the bankruptcy court are reviewed *de novo* and factual findings can only be overturned upon a showing of clear error. *In re Kirkland*, 600 F.3d 310, 314 (4th Cir. 2010) (citing *IRS v. White* (*In re White*), 487 F.3d 199, 204 (4th Cir. 2007)).

**I.     The Bankruptcy Court Properly Evaluated The Propriety of Debtor's Vehicle Purchase And Did Not Err In Finding That The Corresponding Vehicle Loan Incurred Prior to Filing Bankruptcy Is Prudent Planning And Not Abusive**

The bankruptcy court properly evaluated the propriety of Debtor's vehicle purchase, correctly interpreting the Supreme Court opinion in *Milavetz, supra*, 130 S. Ct. 1324. The bankruptcy court specifically referred to footnote 6 of the *Milavetz* majority opinion that stated "[t]hus, advice to refinance a mortgage or purchase a reliable car prior to filing because doing so will reduce the debtor's interest rates or improve his ability to repay is not prohibited, as the promise of enhanced financial prospects, rather than the anticipated filing, is the impelling cause." *Id.* at fn 6.

The bankruptcy court correctly determined good faith based on the totality of the circumstances.

> The Fourth Circuit has held that the good faith inquiry is based on the totality of circumstances, taking into account the following factors: the percentage of proposed repayment to creditors, the debtor's financial situation, the period of time over which creditors will be paid, the debtor's employment history and prospects, the nature and amount of unsecured claims, and debtor's past bankruptcy filings, the debtor's honesty in representing the facts of the case, the nature of the debtor's pre-petition conduct that gave rise the debts, whether the debts would be dischargeable in a chapter 7 proceeding, and any other unusual or exceptional problems the debtor faces.
>
> . . .
>
> Balancing all the factors, the Court finds the debtor's Chapter 13 plan has been proposed in good faith.

> [J.A. 104, 108].

The Trustee's contention that the bankruptcy court "failed to evaluate the totality of the circumstances" is not supported by the record.

The Trustee also mistakes the bankruptcy court's statement that the car loan at issue in this case is not of the kind of debt described in *Milavetz* to equate to a *sub silento* ruling that loading up on secured debt is not abusive. (J.A. 108). The bankruptcy court stated that the debt is not unsecured debt in which the debtor would hope to receive a discharge as a part of the totality of the circumstances in a good faith analysis. (J.A. 108).

The Trustee argues the 2005 Ford Mustang was not experiencing any *major* mechanical issues at the time he traded the vehicle in and therefore the trade-in was unnecessary. The Debtor testified that his seven-year old 2005 Ford Mustang

would need repairs over the course of Debtor's five-year Chapter 13 plan. The proper inquiry is whether anticipating that a seven-year old vehicle would need repairs over the course of the next five years is prudent planning or an abusive practice. As the bankruptcy court properly pointed out, the Supreme Court in *Milavetz* expressly authorizes this kind of prudent planning.

Additionally, the type of vehicle Debtor purchased and the vehicle Service Contract and Maintenance Agreement further support the finding that Debtor's motivation was to secure a reliable vehicle that would last throughout the term of Debtor's Chapter 13 Plan. As the Debtor testified, the 2013 Ford Focus is more fuel efficient and also reduces the cost of automobile insurance.[1] (J.A. 80-81, 85). The Service Contract and Maintenance Agreement will reduce any future expenses relating to vehicle maintenance or repairs that could interfere with his Chapter 13 Plan payment.

The Trustee also argues the bankruptcy court failed to balance the interest of creditors by not examining whether the Debtor could have purchased a vehicle at a lower cost. The Trustee's argument is inconsistent with the way the 2005 Bankruptcy Reform was drafted. Congress enacted The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BACPA") in order to help

---

[1] Debtor's insurance payments are reduced because the 2013 Ford Focus is not considered a sports car. (J.A. 85).

ensure that debtors who can repay their debts do so. *Ransom v. FIA Card Servs., N.A.*, 131 S. Ct. 716, 721 (2011). "In particular, Congress adopted the means test-'[t]he heart of [BACPA's] consumer bankruptcy reforms[.]'" *Id.* The means test provides a formula to calculate a debtor's disposable income. *Id.* Disposable income is defined as "current monthly income" less "amounts reasonably necessary to be expended" for "the maintenance or support of the debtor or a dependent of the debtor," charitable contributions that meet the statutory definition, and certain business expenses necessary for the operation of the business. 11 U.S.C. §§ 1325(b)(2)(A)(i) and (ii). For a debtor who is over the median income, '[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service ["IRS"] for the area in which the debtor resides." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The Local Standards include an allowance for two types of transportation expenses: "Ownership Costs" and vehicle "Operating Costs." *Ransom, supra* at 722. The ownership category encompasses the costs of a car loan or lease[.]" *Id.* at 725. The applicable IRS standard ownership allowance for the D.C. metro area that is the allowable expense deduction used on the means test on the date the Debtor filed

10

his petition was $517 and the operating costs are $277 (as supplied in the record and reproduced below for convenience). (J.A. 62-63).

| Public Transportation Costs (Line 22, Form 22A) (Line 27, Form 22C) | | |
|---|---|---|
| National | $182 | |
| Operating Costs (Line 22, Form 22A) (Line 27, Form 22C) | | |
| Region | One Car | Two Cars |
| South Region | $244 | $488 |
| MSA Locations Within Census Region: | | |
| Atlanta | $256 | $512 |
| Baltimore | $250 | $500 |
| Dallas-Ft. Worth | $277 | $554 |
| Houston | $312 | $624 |
| Miami | $346 | $692 |
| Washington, D.C. | $277 | $554 |
| Ownership Costs (Lines 23 and 24, Form 22A) (Lines 28 and 29, Form 22C) | | |
| National | One Car | Two Cars |
|  | $517 | $1,034 |

Consequently, even if the Debtor purchased a vehicle at a lower cost, the means test rounds the secured vehicle payment to $517, the allowable ownership costs for one car per the IRS Local Standards, unless the payment is higher than $517. (Presumably, a payment over the $517 would be considered a luxury vehicle.) In this case, the Debtor's payment of $419.39 is under the $517 allowable ownership costs. If the Debtor eliminated the Service Contract and Maintenance Agreement, the Debtor's secured payment would still be rounded to $517. Consequently, a lower payment and/or elimination of the additional service contract and maintenance agreement would not have an effect on the Debtor's Disposable Income Calculation.

The Trustee further argues the Debtor's testimony indicating he is aware and that counsel advised him incurring a monthly secured payment obligation would lower the monthly disposable income he would have available to repay creditors supports the inference that Debtor's primary reason in securing a new vehicle was the impending bankruptcy. However, the Trustee ignores the attorney's obligation of diligence and zeal.[2] "A lawyer may discuss the legal consequences of any proposed course of conduct with a client[…]."*Milavetz, supra*, 130 S. Ct. at 1337-38. Therefore, it should be no surprise that Debtor was aware of the consequences

_____

[2] A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. VA. RULES OF PROF'L CONDUCT R. 1.3 cmt. 1 (2013).

12

of incurring a secured payment obligation. More importantly, it has no bearing on the Debtor's motivations in this case since the Debtor testified that he incurred the debt in order to obtain a reliable form of transportation for the next five years. Debtor reasonably anticipated that a seven-year old vehicle would not make it another five years, in which the vehicle would then be twelve-years old, without significant repairs affecting Debtor's expenses and his Chapter 13 Plan in the future.

More importantly, a debtor is required under the Code to propose a plan that is feasible. A plan cannot be confirmed unless, "[t]he debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). A prudent debtor will want to arrange his affairs so that it is possible to hold his transportation expenses to the $277 operating costs allowed under the means test.

Debtor testified that, while driving the Mustang, he was spending about $175 a month on gasoline and $82 on insurance. (J.A. 82-83). That left only $20 a month for maintenance and repairs, which was not realistic on a seven-year old car, projecting five years into the future. Debtor's purchase of a more fuel efficient vehicle, under warranty, that cost less to insure, furthered his legal obligation to propose a plan that he could actually carry out.

13

**II.     The Bankruptcy Court Properly Found That Debtor's Plan Was Proposed In Good Faith**

Debtor's pre-petition conduct in arranging his affairs for a feasible and successful Chapter 13 plan is prudent planning permissible under *Milavetz*, *supra*, 130 S. Ct. 1324.

Congress adopted the means test to correct perceived abuses of the bankruptcy system and to help ensure debtors who can pay creditors do pay them. *Ransom, supra*, 131 S. Ct. at 721 (2011). Congress intended to use a standardized or mechanical test to avoid reliance on individualized information. *In re Randle*, 358 B.R. 360, 364 (Bankr. N.D. Ill. 2006) (*citing* Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, Pt. 1, p. 553, 109th Cong., 1st Sess. (2005), U.S. Code Cong. & Admin. News 2005, p.88).

**A.     The Bankruptcy Court Meaningfully Evaluated The Totality of Debtor's Chapter 13 Plan And Did Not Accept Debtor's Candor In Lieu Of Actual Good Faith**

The bankruptcy court meaningfully evaluated the totality of circumstances necessary to determine whether the Debtor proposed his plan in good faith. The Debtor's candor with the court was one of the factors supporting the Debtor's proper motivation and intent in filing his Chapter 13 plan, but was not accepted in lieu of actual good faith.

14

The Trustee relies heavily on *In re McGovern*, 297 B.R. 650 (S.D. Fla. 2003), a pre-BACPA case, in arguing that Debtor was intending to achieve debt avoidance. The facts in *McGovern* are extreme and much different than the case at hand. The debtor, a practicing attorney, filed bankruptcy the day before he was scheduled to appear for a deposition in aid of collecting a state court judgment entered against him. *In re McGovern*, *supra*, 297 B.R. at 653. The underlying state court judgment arose from a jury verdict that found the debtor defamed the judgment creditor by falsely accusing the judgment-creditor of being a child molester in an attempt to destroy the judgment creditor's candidacy for student president. *Id.* Approximately 96% of the debtor's potentially dischargeable debts were associated with the litigation of the state court action. *Id.* The debtor never made any payments towards the $80,880 judgment entered against him. *Id.* at 659.

The bankruptcy court found that the debtor's pre-petition behavior towards the debtor's primary unsecured creditor was "despicable," but ultimately "irrelevant" as it related to the debtor's chapter 13 plan. *Id.* at 655. The bankruptcy court stated that it suspected the debtor's true motivation was to pay the judgment-creditor as little as possible, however, decided that the debtor was candid with the court, contrite, and therefore motivated to get a fresh start. *Id.* at 659-60.

The district court reversed the confirmation of debtor's plan for failure to consider the debtor's pre-petition behavior. *Id.* Instead of making any payments

15

towards the debtor's $80,880 judgment, the debtor chose to file bankruptcy the day

before his scheduled deposition in aid of execution of the state court judgment. *Id.*

The debtor also threatened to file bankruptcy as early as three years prior to his

actual filing. *Id.* at 661. The district court found that this was evidence "strongly

indicative of debtor intent at judgment avoidance – a core or classic form of bad

faith." *Id.* at 661. The fact that the debtor assumed a new lease for a luxury vehicle,

specifically an Audi A6, two months prior filing in combination with an initial

proposed plan at an 11% distribution over 36 months were merely icing on the

cake. *Id.* at 659.

Furthermore, the district court in *McGovern* cites to five cases that held

debtor's filing was made in bad faith, supporting its holding that a debtor's pre-

filing conduct must be considered in determining intent and motivation in filing

bankruptcy. *Id.* at 661.

> *In re Banks*, 248 B.R. 799 (8th Cir. BAP 2000), *aff'd*, 267
> F.3d 875 (Chapter 13 plan proposed in bad faith where
> subject debt arose from eight years of bitter litigation in
> state courts, and debtor admitted motivation for filing
> was to avoid paying); *In re Larson*, 245 B.R. 609 (Bankr.
> D. Minn. 2000) (Chapter 13 plan not proposed in good
> faith where debt to judgment creditor, constituting more
> than 98% of claims, would likely be nondischargeable as
> debt incurred by fraud, debtor would not have been in
> need of bankruptcy relief but for that judgment, and it
> appeared debtor filed in order to forestall legal action
> against wife); *In re Baird*, 234 B.R. 546 (Bankr. M.D.
> Fla. 1999)(Chapter 13 plan lacking in good faith where
> debtor had little need of Chapter 13 to protect assets,

16

which were few in number, or to repay debts, and was apparently using Chapter 13 to discharge judgment debt which likely would have been excepted from Chapter 7 discharge as based on fraud, conversion and civil theft); *In re Georgeff*, 218 13 B.R. 403 (Bankr. S.D. Ohio 1998)(debtor-attorney did not demonstrate requisite good faith in attempting to use Chapter 13 to thwart judgment creditor-former client's effort to collect judgment); *In re Norwood*, 178 B.R. 683 (Bankr. E.D. Pa. 1995). *See also In re Love, supra* (pre-petition tax protest activity of the debtor, which led to the primary source of his debt, supported finding that he filed Chapter 13 petition without good faith in order to avoid portion of his federal tax liability).

[*Id.* at 661].

None of the pre-petition conduct present in those five cases is present in this case. In the instant case, Debtor proposed a 40% return to unsecured creditors over the course of five years. The debts involved in those cases are debts that would not be dischargeable in a Chapter 7. Such debts were incurred due to fraud, avoiding tax penalties, or other extreme conditions--precisely why BACPA was enacted.

The Fourth Circuit directs the bankruptcy judge to consider as one factor, "the nature of the debtor's pre-petition conduct that gave rise the debts." *In re Solomon*, 67 F.3d 1128, 1134 (4th Cir. 1995). *McGovern*, and the cases cited therein involve fraudulent or reprehensible conduct that gave rise to the debts.

In this case, we are dealing with ordinary consumer debts. Under the Fourth Circuit's totality test, that factor weighs in favor of the debtor's good faith.

17

Nor has the Debtor proposed a Chapter 13 Plan solely to pay as little as possible on debts that would not have otherwise been dischargeable. The Debtor's prepetition conduct in arranging a reliable vehicle that would last throughout the Debtor's entire Chapter 13 plan and obtaining a 401(k) loan some seven months prior to filing (the bulk of which was used for moving to a more affordable location) cannot be likened to the pre-petition conduct found to be motivated by bad faith in the above cases. Additionally, the bankruptcy court did not solely rely on the Debtor's candor with the court in making its determination. The bankruptcy court stated that it had the opportunity to observe the Debtor's demeanor and *after balancing all of the factors*, found that the Debtor's Chapter 13 Plan was proposed in good faith. (J.A. 108).

The Trustee also argues that the Debtor did not experience any unusual or exceptional events as the debtor did in *In re Wick*, 421 B.R. 206 (Bankr. D. Md. 2010). In *Wick*, the bankruptcy court relied on those unusual and exceptional events to allow a plan that included a mortgage payment more than four times the IRS standard allowance incorporated into the bankruptcy means test. *In re Wick*, *supra*, 421 B.R. 206. In the present case, the debtor's secured payment on his vehicle is LESS than the standard. No exceptional circumstances should be necessary.

18

The court in *Wick* found that the debtor's plan was proposed in good faith, considering that a 15% repayment "is not minimal." *Id.* at 215. In the present case, the proposed 40% repayment is even more clearly "not minimal" despite the Trustee's argument that the Debtor's repayment is "nominal."

## B.     The Bankruptcy Court Properly Scrutinized Debtor's Pre-petition Purchase of A Vehicle

The Trustee argues that the bankruptcy court failed to analyze any harm to creditors by Debtor's conduct citing *In re Williams*, 475 B.R. 489 (Bankr. E.D. Va. 2012). The debtors in *Williams* traded in two four-year old luxury vehicles for a brand new luxury vehicle six days before they filed their bankruptcy. *In re Williams, supra*, 475 B.R. at 3-4.

The Trustee argues that the facts in *Williams* are very similar to the facts in this case, specifically stating the debtor disposed of two vehicles with equity in them prior to filing. However, the differences between the two are critical. In this case, the Debtor disclosed on his Statement of Financial Affairs that he had a 2009 Harley Davidson that he sold two months prior to filing. (J.A. 33). Almost all of the proceeds of the sale of the 2009 Harley went to paying off the lien. *Id.* The Debtor's net proceeds were only $308, which the Trustee continues to ignore. *Id.* While the Trustee argues that disposing of the encumbered 2009 Harley is pre-petition misconduct, it is better understood as evidence of a sincere desire to reduce expenses.  The vehicle Debtor traded in prior to filing was a seven-year old

19

sports car, three years older than the vehicles at issue in *Williams*, anticipating that it would not last throughout the duration of Debtor's five-year Chapter 13 plan, without significant repairs.

The Trustee acknowledges that the bankruptcy court took into consideration the amount of available funds had the trade-in not occurred. Additionally, the bankruptcy court stated that the Debtor's plan proposes 40 cents on the dollar whereas the debtors in *Williams* proposed $150 a month for the entirety of the 60 month plan. (J.A. 107). Also, the bankruptcy court posed the following question to the Trustee on the record, "So. In five years, isn't it fairly predictable that over the course of the next five years, there would have been significantly increased expenses?" (J.A. 96). The Trustee replied, "Yes, sir[,]" although the Trustee disagreed with the amount of those expenses. (J.A. 96).

The bankruptcy court heard the Debtor's testimony and arguments of counsel on the record. The record reflects Debtor's position that if he had in fact kept the unencumbered, seven-year old sports vehicle, the Debtor would likely need repairs in the future, to which the Trustee agreed, and/or would not likely be able to obtain reasonable financing, or even secure a newer used vehicle, which would also require repairs. These unknowns often lead to the collapse of a debtor's chapter 13 plan. Taking all of this into account, through testimony and arguments

of counsel, the bankruptcy court did not fail to scrutinize the effect of the vehicle purchase on Debtor's creditors.

## III. The Bankruptcy Court Did Not Improperly Take Judicial Notice That Debtor Would Only Be Able To Obtain An "Exorbitant" Interest Rate On A Vehicle Loan During His Bankruptcy

The bankruptcy court did not take judicial notice that this debtor may only obtain an exorbitant interest rate on a vehicle loan during his bankruptcy. The bankruptcy court was required to perform a "good faith" analysis which consists of weighing a number of factors previously outlined above. The bankruptcy court found the Debtor's testimony as reasonable in weighing the factors that determine "good faith." The Trustee misinterprets the bankruptcy court's order as improperly taking judicial notice of interest rates.

The Debtor testified, "And as I found out doing all my research for filing for bankruptcy, I can't really expect my credit to be good again until, best case scenario 2020, so it would have been a 15-year old car by that point." (J.A. 83). The bankruptcy court's order states, "And, he testified that if he were to file for bankruptcy and needed to purchase a vehicle during the course of his case, the interest rate for a new car loan would be exorbitant." (J.A. 108). The bankruptcy court simply paraphrased what the Debtor stated. The bankruptcy court did not make a specific finding that the Debtor would only be able to obtain an exorbitant interest rate on a vehicle loan during his bankruptcy. It is clear from the order that

21

the bankruptcy court took the Debtor's genuine concern about the availability of financing into consideration as one of the factors that led this Debtor to purchase the car in good faith.

Moreover, once a plan has been confirmed, a debtor may only obtain a modification of that plan if the debtor experiences a "substantial" and "unanticipated" change. *In re Murphy*, 474 F.3d 143, 149 (4th Cir. 2007) (quoting *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989). This doctrine "ensures that confirmation orders will be accorded the necessary degree of finality, preventing parties from seeking to modify plans when minor and anticipated changes in the debtor's financial condition take place." *Id.*

The Trustee implies that modification of a debtor's chapter 13 plan and favorable interest rates are regular and easily obtainable outcomes for chapter 13 debtors. The trustee cites to *In re Chapman*[3] for support in his argument. Although not properly before this Court[4], the debtor in that case, Ginger Chapman, received

---

[3] Case No. 09-13113-RGM: Debtor's Mot. To Approve Purchase and Financing 1, Dec. 6, 2012, ECF No. 27; Hearing held, motion granted, January 9, 2013, ECF No. 30.

[4] The Trustee seeks to introduce new evidence of interest rates that was not made part of the bankruptcy court record. Rule 10(a) of the Federal Rules of Appellate Procedure state that the record on appeal consists of "(1) the original papers and exhibits filed in the district court; (2) the transcript of proceedings, if any; and (3) a certified copy of the docket entries prepared by the district clerk."

22

court approval to obtain financing on a new vehicle when her old vehicle stopped working. Ms. Chapman's approval to purchase and finance a new vehicle was contingent upon her ability to demonstrate that her income had increased enough to support the new vehicle payment outside of her Chapter 13 plan. As this Court can see, the bankruptcy court's Order required Ms. Chapman to come up with the additional income to make the car payment. This is not a solution for the hypothetical chapter 13 debtor who receives a bill for $3,000 in car repairs.

The question then becomes whether repairs on a vehicle that was seven years old at the commencement of the Debtor's plan is now both a "substantial" and "unanticipated" change in order to render a modification of the plan. It is hard to imagine that Debtor's seven-year old sports vehicle would need significant repairs over the next five years would be considered an "unanticipated" change. At the end of the plan, the Debtor's vehicle will be twelve years old.

Under this strict standard, it is unlikely the debtor would be granted a modification of his Chapter 13 plan in the future, despite the Trustee's implication that he could without any trouble. Without being certain the Debtor could obtain a modification over the course of his five-year plan, the Debtor would be forced to face any future maintenance and repair costs as well as be responsible for obtaining

---

The Trustee picked and chose a very specific and minute number of cases with favorable interest rates that was not made part of the bankruptcy court record. The Trustee had the ability to present such evidence, but chose not to do so.

23

new transportation should his seven-year old vehicle become unreliable at some

point without the budget to afford such costs. Should the Debtor need a

replacement vehicle, any used vehicle that the debtor may be able to secure would

also likely have mechanical and/or repair needs.

Therefore, the Debtor's plan would likely become unfeasible and ultimately

fail by being forced to pay these additional costs and expecting that it not affect the

Debtor's ability to comply with his Chapter 13 Plan. By obtaining reliable

transportation for the remainder of Debtor's plan, the Debtor acted prudently and

in accord with all of the statutory requirements, ensuring that his plan would be

feasible by being able to make all his payments and comply with his Chapter 13

Plan in which his creditors will be paid.

## CONCLUSION

The Debtor respectfully asks this Court to affirm both the bankruptcy court's

Order Overruling Chapter 13 Trustee's Objection and Order Confirming Plan and

the district court's order affirming the bankruptcy court's orders. The record fully

supports the bankruptcy court's decision that the Debtor's purchase of a 2013 Ford

Focus represented prudent planning, rather than abusive conduct as both the

bankruptcy court and the district court found.

The bankruptcy court clearly articulated and considered the factors in the

Fourth Circuit totality test of good faith. The pre-petition conduct test, leaned on so

24

heavily by the Trustee, is specified by the Fourth Circuit as "pre-petition conduct that gave rise to the debt." That factor, as properly defined, weighs in the debtor's favor here, as there is no allegation whatsoever of fraud, misdealing, or reprehensible conduct.

## STATEMENT REGARDING ORAL ARGUMENT

Appellee requests oral argument as to all issues relating to this appeal.

Dated: June 30, 2014                                      Respectfully Submitted,

/s/ Robert R. Weed
Robert R. Weed
*Counsel for Appellee*
VSB # 24646
LAW OFFICES OF ROBERT ROSS WEED
45575 Shepard Drive, Suite # 201
Sterling, VA 20164
Phone: (703) 335-7793
Fax: (703) 649-0822
E-mail: robertweed@robertweed.com

/s/ Kaitlin A. Vaillancourt
Kaitlin A. Vaillancourt
*Counsel for Appellee, On the Brief*
VSB # 83922
LAW OFFICES OF ROBERT ROSS WEED
45575 Shepard Drive, Suite # 201
Sterling, VA 20164
Phone: (703) 335-7793
Fax: (703) 677-8774
E-mail: kaitlin@robertweed.com

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
32(a)(7)(B) because:

this brief contains 5,705 words, excluding the parts of the brief
exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using
Microsoft Word in 14 point Times New Roman.

/s/ Robert R. Weed
Robert R. Weed

*Counsel for Appellee*

Dated:  June 30, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on June 30, 2014, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will send notice of such

filing to the following registered CM/ECF users:

> Eva Choi
> OFFICE OF THE CHAPTER 13 TRUSTEE
> 300 North Washington Street, Suite 400
> Alexandria, VA 22314
> (703) 837-9282
>
> *Counsel for Appellant*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

> /s/  Shelly N. Gannon
> Shelly N. Gannon
> GIBSON MOORE APPELLATE SERVICES, LLC
> 421 East Franklin Street, Suite 230
> Richmond, VA  23219